## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHERYL CROCHET and ALEXANDRIA CROCHET, individually and on behalf of decedent, CHRISTOPHER CROCHET** | **CIVIL ACTION** |
| | **NO.** |
| **VERSUS** | **SECTION** |
| **SEADRILL AMERICAS, INC., ABC INSURANCE COMPANY, WEST NEPTUNE, FRANK'S INTERNATIONAL, LLC, DEF INSURANCE COMPANY, LLOG EXPLORATION COMPANY, LLC d/b/a LLOG BLUEWATER HOLDINGS, LLC, and XYZ INSURANCE COMPANY** | **JUDGE** **MAGISTRATE** |

## <u>NOTICE OF REMOVAL</u>

Defendants Frank's International, LLC, LLOG Exploration Company, LLC allegedly d/b/a LLOG Bluewater Holdings, LLC, and Seadrill Americas, Inc. (collectively, "Defendants") file this Notice of Removal of this civil action to the United States District Court for the Western District of Louisiana and respectfully submit as follows:

### PENDING STATE COURT SUIT

1.      On March 16, 2022, Cheryl Crochet and Alexandria Crochet (collectively, together "plaintiffs") alleged survivors of decedent Cristopher Crochet ("Mr. Crochet" or "decedent") filed, individually and on behalf of decedent a civil action naming Frank's International, LLC ("Frank's International"), LLOG Exploration Company, LLC ("LLOG") allegedly d/b/a LLOG Bluewater Holdings, LLC, and Seadrill Americas, Inc. (Seadrill") as the defendants in Cause Number C-20221356 C, *Cheryl Crochet and Alexandria Crochet, individually and on behalf of decedent, Cristopher Crochet  v. Seadrill Americas, Inc., et al.* in the 15th Judicial District Court for the Parish of Lafayette, Louisiana.

1

2.      Plaintiffs' suit arises out of the death of Mr. Crochet aboard the WEST NEPTUNE (the "Vessel"), an ultra-deepwater drillship operated by Seadrill, on or March 18, 2021.[1] At the time of the incident, the rig was located on the U.S. Outer Continental Shelf ("OCS") directly south of LaFourche Parish.[2]  Specifically, plaintiffs allege that Mr. Crochet "died of heart attack" while he "was a Jones Act seaman employed by Frank's Oilfield Services, LLC," and "the Jones Act employee of Seadrill Americas and/or LLOG Exploration Company, LLC, and/or LLOG Bluewater Holdings LLC, assigned to the motor vessel WEST NEPTUNE."[3]  As a result, plaintiffs' petition asserts claims of Jones Act, unseaworthiness, survival action under LSA-CC Art. 2315.1, wrongful death action under LSA-CC Art. 2315.2, and action under 33 U.S.C 905(b) against defendants.[4]

3.      Plaintiffs allege that jurisdiction is proper in the  Parish of Lafayette district court pursuant to the Saving to Suitors clause, 28 U.S.C. § 1333, because Mr. Crochet allegedly was  a Jones Act seaman.[5] However, as shown below, Mr. Crochet was not a Jones Act seaman. Furthermore, plaintiffs' claims fall under the Outer Continental Shelf Lands Act (the "OSCLA"), which gives federal district courts original jurisdiction.  *See* 43 U.S.C. § 1349(b)(1) and 43 U.S.C. § 1333(a)(1)-(2). In addition, plaintiffs' *in rem* claims against the Vessel are removable because federal courts have original and exclusive jurisdiction over such claims, notwithstanding the Saving to Suitors exception to federal admiralty jurisdiction. *See Finney v. Bd. of Commissioners of Port of New Orleans,* No. CV 21-1186, 2021 WL 5905642, at *7–10 (E.D. La. Dec. 14, 2021). Accordingly, Plaintiffs' claims are removable under 28 U.S.C § 1441(a).

---

[1] *See* Plaintiffs' Petition for damages, at ¶ 5, attached hereto as Exhibit 1.
[2] *See*  Declaration of Michael James Brooks, attached hereto as Exhibit 2.
[3] Exhibit 1 at ¶¶4, 5.
[4] *Id.* at ¶¶ 8-13.
[5] *Id.* at ¶ 7.

2

## TIMING OF REMOVAL

4.      On March 16, 2022, Plaintiffs filed their Petition for Damages against defendants. On March 23, 2022, LLOG was served with process.[6] On March 28, 2022, Frank's International was served with process.[7] Also, on March 28, 2022, Seadrill was served with process.[8] Thus, pursuant to 28 U.S.C. 1446(b)(1), this Notice of Removal is timely because it was filed within 30 days of service upon Frank's International and Seadrill.

## REMOVAL JURISDICTION

5.      A defendant has the right to remove a case to federal court when federal jurisdiction exists and when the removal procedure is properly followed. *See* 28 U.S.C. § 1441. Removal of this case is permitted because plaintiffs' Jones Act claim on behalf of Mr. Crochet was improperly pled. Additionally, under 28 U.S.C. § 1441(a), any state court civil action over which a federal court would have original jurisdiction may be removed from state to federal court. *See* 28 U.S.C. § 1441(a).  Removal of this case is, therefore, proper pursuant to 28 U.S.C. § 1441(a) because plaintiffs' claims fall under the OSCLA, which confers original jurisdiction upon this Court.[9]

**A.      Removal Is Permitted Because Cristopher Crochet Was Not a Jones Act Seaman**

6.      When a plaintiff sues under the Jones Act, the defendant generally cannot remove. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115 (2013). If a Jones Act claim is improperly or "fraudulently" pled, however, the case is removeable. *Id.* A district court may use a "summary judgment-like procedure" to determine whether a Jones Act claim was fraudulently pled. *Id.* "The

---

[6] *See*, Citations issued to LLOG, Frank's International, and Seadrill, attached hereto *in globo*  as Exhibit 3.
[7] *Id.*
[8] *Id*.
[9] While the facts of this case merit removal of the entire case, specifically plaintiffs' *in rem* claims against the Vessel are also removable under 28 U.S.C. § 1441. *See*, *Finney v. Bd. of Commissioners of Port of New Orleans,* No. CV 21-1186, 2021 WL 5905642, at *7–10 (E.D. La. Dec. 14, 2021).

fact that Jones Act claims are ordinarily not removeable does not prevent this inquiry." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 206 (5th Cir. 1993). Rather, "defendants are permitted to demonstrate that parties—or claims—are baseless in law and fact and serve only to frustrate federal jurisdiction." *Id.* To remove based on improperly pled claims, "[t]he removing party must show that there is no possibility that [the] plaintiff would be able to establish a cause of action." *Id.* at 207.

7.    To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). "Under the Jones Act, a 'seaman' is a term of art for an employee whose duties 'contribut[e] to the function of the vessel or to the accomplishment of its mission' and who has 'a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). This two-part test distinguishes "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *In re Endeavor Marine Inc*, 234 F.3d 287, 290 (5th Cir. 2000) (quoting *Chandris*, 515 U.S. at 368).

8.    Plaintiffs bear the burden of proof for establishing Mr. Crochet's seamen status. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003). To satisfy the first element, a claimant must show that he "do[es] the ship's work." *Chandris*, 515 U.S. at 369. The second element, however, does not look to the employee's particular job but to "the employee's connection to a vessel." *McDermott Int'l Inc. v. Wilander*, 498 U.S. 337, 354 (1991). A seaman must have an employment-related connection to a vessel in navigation that is substantial in both duration and nature. *See Chandris*, 515 U.S. at 371.

1.      **Mr. Crochet was not a seaman under the Jones Act because he did not have an employment connection with any vessel or fleet of vessels that was substantial in duration.**

9.      The Supreme Court "has approved the [Fifth Circuit's] rule of thumb as a guide to the degree of permanence required to satisfy the duration element. 'A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.'" *Sanchez v. Smart Fabricators of Texas, L.L.C.,* 997 F.3d 564, 571 (5th Cir. 2021). *See also Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 at 375 (5th Cir. 2001) ("We have left no doubt that the 30 percent threshold for determining substantial temporal connection must be applied, regardless of whether one vessel or several are at issue."). Indeed, "to be a seaman, [plaintiff] must show that he actually worked on a vessel [or fleet of vessels] *at least* 30% of the time." *Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1037 (5th Cir. 2015) (emphasis added). "In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556-557 (1997). Additional factors that merit consideration under *Sanchez* are: "(1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer? (2) Is the work sea-based or involve seagoing activity? (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?" *Sanchez,* 997 F.3d 574 (5th Cir. 2021).

10.     There is no possibility that plaintiffs can establish a Jones Act cause of action against any defendant because there is no possibility that Mr. Crochet qualified as a Jones Act

seaman. Frank's International maintained detailed records regarding Mr. Crochet's work history,[10]

including the dates Mr. Crochet worked, the location Mr. Crochet was tasked to work, the name

and type of the specific rig, ship, or platform Mr. Crochet worked on, the operator and/or contractor

of each structure, and the number of hours Mr. Crochet worked.[11] The table below shows that

Crochet worked less than 30% of the time on any particular vessel or fleet of vessels under

common ownership or control:[12]

| DATE | STRUCTURE | LOCATION | FRANK'S CUSTOMER OPERATOR | HOURS SPENT | % OF TIME |
|---|---|---|---|---|---|
| 12/22/18 | WEST VELA | Drillship https://www.seadrill.com/application/files/9715/7288/7957/west-vela.pdf | Seadrill Ltd. | 203.5 | 2% |
| 6/26/19-7/4/19 3/6/21-3/11/21 | WEST NEPTUNE | Drillship https://www.seadrill.com/application/files/1815/9654/8023/West-Neptune.pdf | Seadrill Ltd. | 552.5 | 5% |
| 10/3/18-10/11/18 5/12/20-6/4/20 | TRANSOCEAN DEEPWATER PONTUS | Drillship https://www.deepwater.com/documents/RigSpecs/Deepwater%20Pontus.pdf | Transoc. Ltd. | 890.5 | 8.6% |
| 8/22/19-9/5/19 11/25/19-12/5/19 2/26/20 8/13/20-8/28/20 | DEEPWATER PROTEUS | Drillship https://www.deepwater.com/Documents/RigSpecs/Deepwater%20Proteus.pdf | Transoc. Ltd. | 1,133 | 11% |
| 10/5/19-10/10/19 | DEEPWATER THALASSA | Drillship https://www.deepwater.com/Documents/RigSpecs/Deepwater%20Thalassa.pdf | Transoc. Ltd. | 180 | 1.7% |

[10] Mr. Crochet was first hired by Frank's International as a Field Service Technician, II on March 27, 2000. Mr. Crochet remained in that role until May 24, 2017 at which point his employment with Frank's International ended. Mr. Crochet was then re-hired as a Shop Technician, II on September 7, 2017, where he continually worked on land. He was transferred to the field effective September 21, 2018. *See* Declaration of Dewayne Arceneaux at ¶4, attached hereto as Exhibit 4.
[11] *See* Exhibit 4, at ¶¶ 5,6.
[12] *See* Exhibit 4, at ¶7.

PD.37340286.1

| | | | | | |
|---|---|---|---|---|---|
| 11/5/19-11/7/19 | DEEPWATER POSEIDON | Drillship<br><br>https://www.deepwater.com/documents/RigSpecs/Deepwater%20Poseidon.pdf | Transoc. Ltd. | 200.5 | 1.95% |
| 10/23/18-10/25/18<br>1/24/19 | ROWAN RESOLUTE | Drillship<br><br>https://s1.q4cdn.com/651804090/files/docs_rigspecs/EnscoRowan/ROWAN_202_RowanResolute.pdf | Ensco Rowan | 452 | 4.4% |
| 1/12/20-1/30/20 | ROWAN RELENTLESS | Drillship<br><br>https://s1.q4cdn.com/651804090/files/docs_rigspecs/EnscoRowan/ROWAN_204_RowanRelentless.pdf | Ensco Rowan | 707 | 7% |
| 3/22/19<br>1/18/20<br>11/19/20 | OCEAN BLACKLION | Drillship<br><br>https://www.riglynx.com/ocean-blacklion-renews-for-2-more-years-with-bp-in-the-gom | Diamond Offshore | 347.5 | 3.3% |
| 3/12/20-3/26/20 | OCEAN BLACKRHINO | Drillship<br><br>http://www.diamondoffshore.com/diamond-offshore-profile/ultra-deepwater-operations | Diamond Offshore | 741 | 7.2% |
| 4/12/20-4/23/20 | OCEAN BLACKHORNET | Drillship<br><br>http://www.diamondoffshore.com/diamond-offshore-profile/ultra-deepwater-operations | Diamond Offshore | 424.5 | 4% |
| 5/1/19-6/20/19 | TIMBALIER | Barge Rig<br><br>https://www.baywaterdrilling.com/rig/timbalier/ | Baywater Drilling | 901.5 | 8.8% |
| 11/19/18-12/6/18 | ENTERPRISE 264 | Drilling Vessel<br><br>https://enterpriseoffshore.com/wp-content/uploads/EOD264-Spec-Sheet-Rev-12-New-Version-Feb-8-2021.pdf | Enterprise Offshore Drilling | 512.5 | 5% |

7

| | | | | | |
|---|---|---|---|---|---|
| 11/13/18 6/24/20-7/13/20 | HELIXQ5000 | Vessel https://helixesg.com/our-assets/q5000/ | Helix | 900.5 | 8.7% |
| 2/27/19-2/28/19 | PARKER 51B | Barge Rig https://parkerwellbore.com/rigs/parker-rig-51b/ | Parker Drilling | 13.5 | Less than 1% |
| 1/5/19 4/19/19 | SUPER SUNDOWNER XIV | Platform workover rig https://www.nabors.com/for-operators/offshore-rigs/sundowner/ | Nabors Offshore | 232.02 | 2.2% |
| 8/10/19-8/15/19 | WEST CAPRICORN | Semi-submersible drilling rig https://www.seadrill.com/application/files/2915/7288/7943/west-capricorn.pdf | LLOG | 197 | 2% |
| 4/4/19-4/11/19 | MAD DOG | Platform https://www.valaris.com/our-fleet/managed-platforms/default.aspx | Ensco Rowan | 160.5 | 1.5% |
| 2/11/19-2/14/19 | HOLSTEIN | Platform https://www.offshore-technology.com/projects/holstein/ | Anadarko | 593 | 5.7% |
| 2/13/20 12/7/20-12/17/20 | THUNDER HORSE | Platform https://www.offshore-technology.com/projects/crazy_horse/ | BP PLC and Exxon Mobile joint venture | 465.5 | 4.5% |
| 8/4/20-8/5/20 | N/A | Lafayette, LA | Frank's | 12 | Less than 1% |
| 9/21/20-10/21/20 | N/A | Ascension Parish, LA | Cust. - Dow Chemical | 192 | 2% |
| 11/30/20 1/29/21 | N/A | Iberville Parish, LA | Cust. - WSP USA INC | 179.5 | 2% |
| 3/2/21- | N/A | Iberville Parish, LA | Cust. - | 48 | Less |

8

| 3/3/21 | | | Texas Brine Co LLC | | than 1% |
|---|---|---|---|---|---|

**Total hours: 10,239.52**

Specifically, from his transfer from land-based work on September 21, 2018, to offshore work until March 18, 2021, Mr. Crochet worked a total of 10,239.52 hours for Frank's International, of which:

    a) 1,650.5 hours or 16% of his time was on land and/or platforms,

    b) 8,589.02 hours or 84% of his time was on various vessels, barge rigs, drill ships, drilling vessels, and/or semi-submersible rigs that were not under any common ownership or control. Of his offshore work, 953 hours were hours Mr. Crochet worked on Seadrill owned and/or controlled and/or operated vessels, or 9% of his time.[13]

As such, Mr. Crochet was not a Jones Act seaman. *See Roberts*, 266 F.3d at 377 (worker spent approximately 28% of his time assigned to a fleet of vessels by a common owner and was not a Jones Act seaman); *Moore v. Universal Sodexho U.S.*, No. H-08-3633, 2010 U.S. Dist. LEXIS 161404 (S.D. Tex. Jan. 2, 2010) (worker spent only 24% of his time on any one vessel and was not a seaman); *Skinner v. Schlumberger Tech. Corp.*, No. 13-3146, 2014 U.S. Dist. LEXIS 24685 (W.D. La. Feb. 25, 2014), *aff'd* 655 Fed. App. 188 (5th Cir. 2016) (worker who spent 19% of time on one vessel and 22% of time on fleet of vessels did not meet the substantial connection requirement); *Washington v. Blanchard Contrs., Inc.*, No. H-08-1806, 2009 U.S. Dist. LEXIS 34749 (S.D. Tex. April 24, 2009) (Lake, J.) (worker who spent 16% of time on vessel did not have substantial connection). Accordingly, because Mr. Crochet did not meet the duration element of

---

[13] The remaining hours that Mr. Crochet worked on vessels, barge rigs, drill ships, drilling vessels, and/or semi-submersible rigs are as follows: Transocean: 2,404 hours or 23%, Ensco/Rowan: 1,159 hours or 13%, Diamond Offshore: 1,513 hours or 15%, Baywater Drilling: 901.5 hours or 9%, Enterprise Offshore Drilling: 512.5 hours or 5% , Helix: 900.5 hours or 9%, Parker Drilling: 13.5 hours or less than 1% of his time, Nabors Offshore: 232.02 hours or 2%.

the seaman status test, defendants are not prohibited from removing plaintiffs' case to federal court.

> **2.    Mr. Crochet was not a seaman under the Jones Act because he did not have an employment connection with the Vessel that was substantial in nature.**

11.    The overarching purpose of the Jones Act, as declared in *McDermott Intern., Inc. v. Wilander*, is to confine Jones Act and other seaman's remedies "to the members of the crew of a vessel plying in navigable waters," with shoreside workers to receive "only such rights to compensation as are given by the [LHWCA]." 498 U.S. at 347. Thus, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea.". *Papai*, 520 U.S. 555 (1997).

12.    In distilling further the principles from the Supreme Court's jurisprudence on seaman status, the *en banc* Fifth Circuit in *Sanchez* rejected the "perils of the sea" inquiry and established the following three factors to be considered:  "(1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer? (2) Is the work sea-based or involve seagoing activity? (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?" *Sanchez,* 997 F.3d 574 (5th Cir. 2021).

13.    A worker's connection with a vessel is not substantial in nature if he is merely a temporary visitor and not a permanently assigned crew member, for Congress never intended workers with a transient and sporadic relationship to be entitled to Jones Act relief. *See Gardner v. Fieldwood Energy LLC*, No. H-18-0841, 2019 U.S. Dist. LEXIS 28649, **7, 13 (S.D. Tex. Jan. 30, 2019) (mem. op.). Indeed, the employees of contractors who perform transient work on a

drilling vessel between voyages are not seamen as a matter of law. *See, e.g., Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001); *Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933 (5th Cir. 1987); *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir. 1987); *Langston v. Schlumberger Offshore Servs., Inc.*, 809 F.2d 1192 (5th Cir. 1987).

14.    Mr. Crochet was the type of worker that Congress wished to exclude from the remedies afforded under the Jones Act; a transient, third-party contractor who had no connection to the Vessel that was substantial in nature. At the time of the alleged incident, Mr. Crochet was an employee of Frank's International. Frank's International's employees, including Mr. Crochet, are employees of a third-party contractor who travel to the location identified by Frank's International's clients, perform the limited and discrete services requested, and depart from the location when the service is completed.[14]

15.    On March 6, 2021, LLOG—an oil and exploration company—requested that Frank's International perform a completions project aboard the Vessel.[15] To perform its services for LLOG, Frank's International employees, including Mr. Crochet, travelled to the Vessel and arrived on or about March 8, 2021.[16] After the limited and discrete tasks requested by LLOG were completed, the Frank's International employees were to return shoreside.[17] At no point was there any seagoing activity whereby Frank's International employees, including Mr. Crochet, traveled while aboard the Vessel. Instead, all the work performed by Frank's International's crew, including Mr. Crochet, on the Vessel was while it was connected to the seabed and subsoil.[18] The Frank's International employees were not permanently assigned to the Vessel but were sent temporarily

---

[14] *See* Exhibit 4, Declaration of Dewayne Arceneaux, at ¶ 11.
[15] *Id.* at ¶ 9.
[16] *Id.* at ¶ 10.
[17] *Id.* at ¶ 11.
[18] *Id.* at ¶ 12.

aboard to perform the temporary work for LLOG, Frank's International's customer.[19] Accordingly, Mr. Crochet was a transient, land-based worker who did not have a substantial connection to the Vessel that was substantial in nature. Plaintiff was, therefore, not a Jones Act seaman, and defendants are not prevented from removing the above-referenced case to this Court.

**B.      Seadrill and LLOG were not Mr. Crochet's Borrowing Employers**

16.      Plaintiffs are also not entitled to relief under the Jones Act because Seadrill and LLOG were not Mr. Crochet's borrowing employers. The Jones Act only confers upon a seaman the right to sue his employer for negligence resulting in his personal injury. *See* 46 U.S.C. § 30104 (emphasis added). Thus, the Jones Act is applicable only if an employment relationship exists. *See id.*

17.      The borrowed employee doctrine is the "functional rule that places the risk of a worker's injury on his actual rather than his nominal employer." *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 178 (5th Cir. 1981). When deciding whether a person qualifies as a borrowed employee, courts should consider the following factors:

a.   Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

b.   Whose work is being performed?

c.   Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

d.   Did the employee acquiesce in the new work situation?

e.   Did the original employer terminate his relationship with the employee?

f.   Who furnished the tools and place for performance?

g.   Was the new employment over a considerable length of time?

---

[19] *Id.*

PD.37340286.1

> h.  Who had the right to discharge the employee?
>
> i.  Who had the obligation to pay the employee?

*Brown v. Union Oil Co.*, 984 F.2d 674, 676 (5th Cir. 1993) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)). "No single factor, or combination of them, is determinative[,]" but the Fifth Circuit has considered control to be the central factor. *Id.* (citing *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988)).

18.     All of the factors weigh against Seadrill and LLOG being Mr. Crochet's borrowing employer. Specifically, Mr. Crochet was supervised by Collin Thibodeaux and Jessie Courville, Frank's International employees, who served as the supervisors of the Frank's International crew working aboard the Vessel.[20] Mr. Thibodeaux had overall direction of the Frank's International employees' work and had oversight over the operative details for each Frank's International work crew.[21] Thus, Frank's International had ultimate control over Mr. Crochet's actions—not Seadrill or LLOG.

19.     Furthermore, at all material times, Frank's International was performing work for LLOG under Master Service Contract ("MSC").[22] There was a meeting of the minds between Frank's International and LLOG regarding Frank's International's work. Specifically, the MSC between LLOG and Frank's International states that the work performed by Frank's International will be that of an independent contractor.[23]

20.     Moreover, Frank's International employed Mr. Crochet for the duration of his time aboard the Vessel and was the sole entity who had the right to discharge him from his employment

---

[20] *See* Exhibit 4, at ¶ 13(i).
[21] *Id.*
[22] *See* Exhibit 4, at ¶ 9.
[23] *Id.* at ¶ 13(vi).

PD.37340286.1

with Frank's International.[24] Frank's International provided its own equipment for the work Mr. Crochet performed on the Vessel, and he did not need to use any of Seadrill's or LLOG's tools or equipment to complete the task Frank's International employees were hired to perform on the Vessel.[25] As such, Frank's International was Mr. Crochet's employer at the time of the incident, and neither Seadrill nor LLOG served as Mr. Crochet's borrowing employer during the time Mr. Crochet performed work aboard the Vessel.

## C.    Removal Is Proper Because Plaintiffs' Claims Arise Under the OSCLA

21.    Pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), this Court has original jurisdiction over "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . .". 43 U.S.C. § 1349(b)(1); *see also* 43 U.S.C. § 1333(a)(1)-(2). Indeed, "OCSLA *explicitly provides* that district courts have federal question jurisdiction over claims occurring on the Outer Continental Shelf." *Barker*, 713 F.3d at 220 (emphasis in original) (citing 43 U.S.C. § 1333(a)(1)).

22.    The OCSLA jurisdictional grant is liberally interpreted and "covers not only cases arising geographically on the OCS but also over cases arising 'in connection with' operations thereon." *Sam v. Laborde Marine, L.L.C.*, No. H-19-4041, 2020 WL 59633, at *2 (S.D. Tex. 2020) (Lake, J.) (quoting 43 U.S.C. § 1349(b)(1)); *see also In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 401 (2014). The Fifth Circuit applies "a but-for test" for determining the existence of OCSLA jurisdiction, asking "whether: (1) the activities that caused the injury constituted an 'operation' 'conducted on the Outer Continental Shelf that involved the exploration and production of minerals', and (2) the case 'arises out of, or in connection with' the

---

[24] *Id.* at ¶ 13(v),(ix).
[25] *Id.* at ¶ 12(vi).

14

operation." *In re Deepwater Horizon*, 745 F.3d at 163.  Both of these requirements for jurisdiction under OCSLA are satisfied here.

1.      **The activities that allegedly caused Mr. Crochet's passing furthered the exploration and production of minerals on the OCS.**

23.      Plaintiffs allege that Mr. Crochet passed away occurred while he was assigned to the Vessel, which was operating in navigable waters of the United States in the Gulf of Mexico off the coast of Louisiana.[26] On the date of the incident, the Vessel was involved in oil and gas drilling operations on the OCS.[27] These operations included plug and abandonment work.[28] Specifically, the Vessel was in the process of cutting and removing 13' 3/8 casing.[29]

24.      The Vessel was located above the OCS at Green Canyon Block-97 off the coast of Louisiana at the following coordinates: 27º50'39.4" N, 91º29'1.3" W.[30] Specifically, the Vessel was directly connected to the OCS seabed by a drill pipe/riser connected to the BOP, which was connect to the wellhead that was connected to the casing. The casing was in contact with the seabed and subsoil and extended miles into the formation below the seabed and it was positioned on the OCS sea floor.[31] The Vessel was, therefore, geographically located on the OCS and was engaged in operations involving exploration and production of minerals on the OCS. *See* H.R. Rep. No. 95-590, at 128 (1977) (stating that the OCSLA is to be applicable to "activities on *drilling ships, semi-submersible drilling rigs, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances*, on the OCS for exploration, development, and production.") (emphasis added).

25.      Furthermore, Frank's International, Mr. Crochet's employer, is a global oil services

---

[26] *See* Exhibit 1, plaintiffs' petition for damages, at ¶ 4.
[27] *See*  Declaration of Michael James Brooks, at ¶ 4, attached hereto as Exhibit 2.
[28] *Id.* at ¶ 5.
[29] *Id.* at ¶ 6.
[30] *Id.* at ¶ 4.
[31] *Id.* at ¶ 6.

company that provides a broad and comprehensive range of highly engineered tubular services to leading exploration and productions companies in both offshore and onshore environments, with a focus on complex and technically demanding wells.[32] Frank's International was hired to perform a completions project aboard the Vessel.[33] Plaintiffs allege that Mr. Crochet passed while he was assigned to the Vessel.[34] Accordingly, Mr. Crochet's passing occurred while he worked as part of Frank's International crew and to provide casing services, i.e. an activity in furtherance of mineral development on the OCS. *See Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 350 (5th Cir.1999).

       **2.    Plaintiffs' claims clearly arise out of operations conducted on the OCS.**

26.    Plaintiffs' claims would not have arisen but for oil and gas drilling operations on the Vessel and for the need of Frank's International services provided to its customer LLOG, which assisted in the exploration and production of oil and gas on the OCS. Indeed, if Mr. Crochet had not been tasked to work on the Vessel, he would not have been there when he passed. *Hubbard v. Laborde Marine LLC*, 2014 WL 12776414 (E.D. La. 2014) ("Plaintiff would not have been aboard the M/V RIG RUNNER but-for the extraction of minerals from the OCS. Accordingly, his injuries are sufficiently related to the operations on the OCS for this Court to exercise jurisdiction"). As such, OCSLA jurisdiction exists over this case based on the two-part test applied in the Fifth Circuit, and the case is properly removable on that basis.

**PROCEDURAL REQUIREMENTS ARE SATISFIED**

27.    Pursuant to 28 U.S.C. § 1446(d), defendants are simultaneously filing written notice of this removal with the Clerk of Court for the 15th Judicial District Court for the Parish of Lafayette, Louisiana the district where the state court action is currently pending. Defendants will

---

[32] See Exhibit 4, at ¶ 9.
[33] *Id.* at ¶ 8.
[34] *See* Exhibit 1, Petition for Damages at ¶ 4.

also give plaintiffs prompt written notice of this Notice of Removal by serving copies of the Notice of Filing Notice of Removal, together with this Notice of Removal, upon plaintiffs' counsel.

28.    Additionally, the United States District Court for the Western District of Louisiana includes the county in which the state court action is now pending. This Court is, therefore, a proper venue for removal of this action pursuant to 28 U.S.C. §§ 124(c)(6) and 1441(a).

## CONCLUSION AND PRAYER

For the foregoing reasons, Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc. respectfully ask this Court to accept this Notice of Removal as good and sufficient, remove the above-described action from the 15th Judicial District of Parish of Lafayette to the United States District Court for the Western District of Louisiana, for trial and determination as provided by law, take jurisdiction of this action to its conclusion or final judgment to the exclusion of any further proceedings in the state court, and grant Frank's International, LLC, LLOG Exploration Company, LLC, and Seadrill Americas, Inc. such other and further relief, in law or in equity, to which it may be justly entitled.

17

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   */s/ Evans Martin McLeod*
       Evans Martin McLeod, (Bar #24846)
       Justin C. Warner, (Bar #37349)
       Magdalini Galitou, (Bar #38473)
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130-6534
       Telephone: 504-566-1311
       Telecopier: 504-568-9130
       marty.mcleod@phelps.com
       justin.warner@phelps.com
       magdalini.galitou@phelps.com


ATTORNEYS FOR FRANK'S
INTERNATIONAL, L.L.C., LLOG
EXPLORATION COMPANY, LLC AND
SEADRILL AMERICAS, INC.

PD.37340286.1